IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

NIGHAT NASEER, individually,

                Plaintiff,

vs.

BRIAN NEIMAN, an individual, THE
FORMULA, INC., a Florida corporation,
COMPASS ROSE VENTURE, LLC, a
Florida limited liability company, U.S.
TITLE & ESCROW, INC., a Florida
corporation, and FIRST INTEGRITY
BANK, a foreign corporation,

                Defendants.

_____/

CASE NO.: 06-005981 (13)

FILED FOR RECORDS
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FLORIDA
2008 APR -8 PM 4: 31
CIRCUIT CIVIL-12

### THIRD AMENDED COMPLAINT

    Plaintiff, NIGHAT NASEER ("NIGHAT"), through counsel, sues Defendants, BRIAN

NEIMAN, an individual ("NEIMAN"), THE FORMULA, INC., a Florida corporation ("THE

FORMULA"), COMPASS ROSE VENTURE, LLC, a Florida limited liability company

("COMPASS ROSE"), U.S. TITLE & ESCROW, INC., a Florida corporation ("U.S. TITLE"),

FIRST INTEGRITY BANK, N.A.  ("FIRST INTEGRITY"), and KASHIF SHAUKAT

("SHAUKAT") and alleges:

### PARTIES, JURISDICTION, AND VENUE

    1.     This is an action for damages in excess of Fifteen Thousand Dollars

($15,000), exclusive of interest, costs and attorneys' fees.

    2.     Plaintiff, NIGHAT is a resident of Florida, over the age of eighteen and is

otherwise sui juris.

    3.     Defendant, NEIMAN is a resident of Broward County, Florida, is over the age

of eighteen and is otherwise sui juris.

**EXHIBIT**

6

tabbies®

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 2

4.    Defendant, THE FORMULA is a Florida corporation with a principal place of business in Fort Lauderdale, Broward County, Florida 33301.

5.    Defendant, COMPASS ROSE is a Florida limited liability company with a principal place of business in Fort Lauderdale, Broward County, Florida 33308.

6.    Defendant, U.S. TITLE is a Florida corporation with a principal place of business in  Fort Lauderdale, Broward County, Florida 33306.

7.    Defendant, FIRST INTEGRITY is a national banking association operating within the State of Florida and is otherwise *sui juris*.

8.    Defendant, SHAUKAT is a resident of Broward County, Florida and is otherwise *sui juris*.

9.    Venue lies in Broward County, Florida.

## GENERAL ALLEGATIONS

### Business Structure and Purpose of the Formula

10.    Starting in or about 2002, SHAUKAT, was an officer, director, and shareholder of the FORMULA.

11.    THE FORMULA was in the business of assisting buyers, in bulk, in purchasing condominium units, at favorable terms, from developers.

12.    As such, the FORMULA had and has numerous joint venture buyers who provide funding to THE FORMULA and/or the developers for the purchase of the pre-construction condominium units.

13.    The FORMULA had its joint venture buyer execute a Power of Attorney

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 3

agreements, granting THE FORMULA the authority to engage in real estate transactions on their behalf as joint venture agents.

14.    Each proposed agreement to purchase a certain number of preconstruction condominium units was considered a "project" and every project had its separate agreement.

15.    Once an agreement was secured with the developers, THE FORMULA, through SHAUKAT, sent a project offering to potential joint venture buyers for their approval.

16.    The joint venture agreement sent to the joint venture buyers set forth, *inter alia,* the location of the purchase, the purchase price, the amount of capital required, the percentage of return to the joint venture buyers.

17.    Once approved, THE FORMULA, through SHAUKAT, worked with the joint venture buyers to secure the necessary funds to proceed on the transactions.

18.    The funds provided by the joint venture buyers were deposits that were placed into an escrow account to secure the purchase of the preconstruction condominium units at the negotiated wholesale price.

19.    THE FORMULA would then resell or *"flip"* the units prior to closing to other buyers, for an increased sales price that resulted in profit to the joint venture buyers.

20.    The proceeds from the resales of the preconstruction condominium units were distributed according to a prearranged formula with the joint venture buyers of THE FORMULA.

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 4

21.    The prearranged formula was set forth in detail in each project agreement sent to the joint venture buyers for their approval.

22.    Plaintiff NIGHAT was one such joint venture buyers with THE FORMULA for a project that was to be developed by defendant Compass Rose.

## Neiman's Involvement with the Formula

23.    NEIMAN worked in a fiduciary capacity, through SHAUKAT, on behalf of THE FORMULA and its joint venture buyers, as he developed beneficial relationships with builders and developers of condominium units throughout the country.

24.    NEIMAN, through SHAUKAT, on behalf of THE FORMULA, as part of his responsibilities, brokered deals between the builders and, or, developers, whereby he would secure agreements, on behalf of THE FORMULA and its joint venture buyers, to purchase a certain number of pre-construction condominium units at wholesale prices directly from the builders and, or, developers.

25.    NEIMAN, through SHAUKAT, on behalf of THE FORMULA, assisted in brokering the deal with Compass Rose.

## The Compass Rose Project

26.    THE FORMULA, through Defendant NEIMAN, negotiated deals with COMPASS ROSE whereby it secured the ability to purchase nearly one quarter of the Boat Slip units being developed by COMPASS ROSE at the COMPASS ROSE Marina in Broward County, Florida. On or about June 6, 2004, said agreement was memorialized in a written document executed by representatives of COMPASS ROSE and by SHAUKAT

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 5

on behalf of THE FORMULA (the "Agreement"). A copy of the Agreement is attached

hereto as Exhibit **"A"**.

27.     In order for the Agreement to take effect, COMPASS ROSE required that an

initial deposit of one hundred thousand dollars ($100,000.00) be made by June 9, 2004.

28.     The Agreement provides Plaintiff NIGHAT with the absolute right to cancel

its terms and receive a full refund of the initial $100,000 deposit plus any interest accrued

thereon. More specifically, paragraph twelve (12) of the Agreement provides,

> If construction of the project has not commenced by
> December 25, 2004, or if construction of the project is not
> completed with 12 months from the date of commencement,
> completion being defined as issuance of a Certificate of
> Occupancy for the building, Buyer shall have the absolute
> right to cancel this Agreement and receive a full refund of all
> deposits paid with interest earned thereon.

29.     To this end, after more than twelve months subsequent to the execution of

the Agreement, the construction project was not completed.

30.     In fact, COMPASS ROSE advised Plaintiff NIGHAT that the project was on

"hold" and was not moving forward.

### Shaukat's Representations to Nighat

31.     SHAUKAT, acting individually and on behalf of the FORMULA presented

Plaintiff NIGHAT with the Compass Rose project and inquired whether she would invest

therein. Plaintiff NIGHAT accepted the opportunity to invest in this particular project.

32.     Specifically, SHAUKAT informed NIGHAT to make a check payable to U.S.

TITLE for $100,000.00 to purchase boat slips at the COMPASS ROSE and have the check

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 6

delivered to U.S. TITLE.

### Nighat's Investment with Compass Rose and involvement of U.S. Title

33.   Following Shaukat's instructions, on or about June 8, 2004, Plaintiff NIGHAT had a check delivered to U.S. TITLE in the amount of $100,000. A copy of the check and corresponding deposit slip is attached hereto as **Exhibit "B."**

34.   Thereafter, on or about June 9, 2004, U.S. TITLE, through its President Fred P. Senesi, sent a confirmation to Plaintiff with the handwritten notation "Received 6/9/04", thus noting that the funds were timely received. A copy of the confirmation is attached hereto as **Exhibit "C."**

35.   Subsequent to NIGHAT'S $100,000.00 deposit with U.S. TITLE, the money was transferred without NIGHAT'S consent or knowledge to FIRST INTEGRITY.

36.   When NIGHAT learned that the boat slips would not be completed within the one year time period as set forth in the Agreement, she made efforts to have her money returned.

37.   In an effort to get her money back, Plaintiff was first  informed by the president of U.S. TITLE that the subject funds were removed from the account at U.S. TITLE and transferred to FIRST INTEGRITY.  However, no explanation was provided as to why the funds were removed and/or the individual or entity who authorized such a withdrawal to be made.

38.   Thereafter, NIGHAT, again through her son Farhan, contacted a principle at COMPASS ROSE, John Lesousky, to inquire about the removal of the funds.

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 7

39.    Mr. Lesousky advised Plaintiff's son that Defendant NEIMAN ordered the withdrawal of Plaintiff's funds from U.S. TITLE, and, as such, he, on behalf of COMPASS ROSE, instructed U.S. TITLE to remove the funds from the account at U.S. TITLE.

## Defendants Failure to Return Funds

40.    Consequently, beginning in or around July of 2005, subsequent to a purported change of control in THE FORMULA whereby SHAUKAT allegedly transferred all of his interest in THE FORMULA to Defendant NEIMAN, Plaintiff NIGHAT, through her sons Rehan Naseer and Farhan Naseer, both non-parties to this action, began to demand the return of her deposit from Defendants NEIMAN, THE FORMULA, U.S. TITLE and COMPASS ROSE.

41.    Further, on or about August 2, 2005, Compass Rose sent a letter (the "Letter") to Defendants NEIMAN and THE FORMULA regarding Plaintiff NIGHAT's notice of cancellation and demands for the return of her deposit. A copy of the Letter is attached hereto as **Exhibit "D".**

42.    The Letter, which was authored more than twelve months following the execution of the Agreement, confirmed that the "project has been placed on hold for an indefinite period..."

43.    Despite her repeated demands, however, all Defendants refused to return her deposit to her.

44.    To this end, there were several additional email communications between Plaintiff NIGHAT and Defendant NEIMAN wherein NEIMAN purported to be willing to

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 8

return/reimburse Plaintiff NIGHAT's funds to her. A copy of a sample of these communications is attached hereto as composite **Exhibit "E."**

45.   Importantly, however, NEIMAN's promises to return the funds proved to be lies.

46.   For example, at one point Defendant NEIMAN arranged a meeting whereby he agreed to meet Plaintiff NIGHAT and return the funds to her.

47.   Inexplicably, however, at the scheduled meeting Defendant NEIMAN advised Plaintiff NIGHAT that he was keeping said funds for himself and would never return them.

48.   Several demands have been made to Defendants since then, yet they continue to fail to return the deposit to Plaintiff NIGHAT.

49.   To this end, on or about February 27, 2006, Plaintiff NIGHAT, by and through the undersigned sent a Civil Theft Demand letter to Defendant NEIMAN demanding the return of the deposit. A copy of the Civil Theft Demand is attached hereto as **Exhibit "F."**

50.   Similarly, on or about March 23, 2006, Plaintiff NIGHAT, by and through her son Farhan Naseer, sent a correspondence to Compass Rose demanding return of the deposit.

51.   Additionally, on or about April 24, 2006 Plaintiff NIGHAT, by and through the undersigned sent a Civil Theft Demand letter to Defendant THE FORMULA demanding the return of the deposit. A copy of this Civil Theft Demand is attached hereto as **Exhibit "G."**

52.   Notwithstanding these repeated demands, Plaintiff continues to be deprived

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 9

the use of her funds.

53.     As a result of Defendants' intentional conduct, Plaintiff NIGHAT has been

damaged.

### Shaukat's Involvement with the Compass Rose Project

54.     Unbeknownst to NIGHAT, SHAUKAT entered into a Letter of Intent with the

COMPASS ROSE to purchase boat slips in his name rather than NIGHAT's name after

NIGHAT made the deposit with U.S. TITLE.

55.     The Letter of Intent named First Integrity as the escrow agent but NIGHAT

was never informed that U.S. TITLE was not the escrow agent.

56.     Plaintiff has retained the undersigned law firm to represent her interests in

this matter and is obligated to pay the law firm all reasonable attorneys' fees and costs

incurred in the pursuit of the claims set forth herein.

### COUNT I:
### CIVIL THEFT PURSUANT TO SECTION 772.11, FLORIDA STATUTES
### (DEFENDANT NEIMAN)

57.     Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-six

(56) as if fully set forth herein.

58.     This *is* an action for civil theft against Defendant NEIMAN, pursuant to

Section 772.11, Florida Statutes.

59.     Pursuant to Section 772.11, Florida Statutes a plaintiff claiming civil theft has

"a cause of action for threefold the actual damages sustained and, in any such action, is

entitled to minimum damages in the amount of $200 and reasonable attorney's fees and

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 10

court costs in the trial and appellate courts." This statute requires the plaintiff to make a written demand for $200 or the treble damage amount of the person liable for the damages, and to provide that person thirty (30) days within which to respond to the demand.

60.    Beginning in approximately July and August of 2005, and continuing to date, Defendant NEIMAN has refused to return Plaintiff NIGHAT's deposit to her.

61.    Defendant NEIMAN has indicated to Plaintiff NIGHAT that he has her funds, but refuses to return them to her.

62.    Defendant NEIMAN was formally notified *via* correspondence dated February 27, 2006 to return said funds belonging to Plaintiff NIGHAT to her. Said correspondence made the statutory demand for return of the funds and treble damages for an amount totaling $300,000. A copy of the Demand Letter is attached hereto as **Exhibit "F."**

63.    To date, Defendant NEIMAN has ignored the Civil Theft Demand, and continues to wrongfully deprive Plaintiff NIGHAT of her funds.

64.    Defendant NEIMAN is aware that the funds at issue belong to Plaintiff NIGHAT, but has personally informed Plaintiff NIGHAT that he would not return the subject funds to her.

65.    As a result of Defendant NEIMAN's conduct, Plaintiff NIGHAT continues to be deprived of the use of her funds.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment in

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 11

its favor and award it treble damages as well as attorneys fees and court costs in

accordance with Section 772.11, Florida Statutes, along with all prejudgment and post-

judgment interest and any other relief that this Court deems appropriate.

<u>**COUNT II: CONVERSION**</u>
<u>**(DEFENDANT NEIMAN)**</u>

66.   Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-

six (56) as if fully set forth herein.

67.   This is an action against Defendant NEIMAN for conversion of funds, of

which the current value exceeds $100,000, inclusive of interest.

68.   The subject funds in the principal amount of $100,000 were placed directly

into the escrow account with Defendant US TITLE as more specifically described in the

general allegations portion of this pleading.

69.   Said funds have since been removed without Plaintiff NIGHAT's

authorization.

70.   Upon information and belief, said funds were removed by Defendant

NEIMAN.

71.   Beginning in approximately July and August of 2005, and continuing to date,

Defendant NEIMAN has refused to return Plaintiff NIGHAT's deposit to her, converting said

funds to his own use.

72.   Defendant NEIMAN has indicated to Plaintiff NIGHAT that he has her funds,

but refuses to return them to her.

73.   Defendant NEIMAN is aware that the funds at issue belong to Plaintiff

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 12

NIGHAT, but has personally informed Plaintiff NIGHAT that he would not return the subject

funds to her.

74.   As a result of Defendant NEIMAN's conduct, Plaintiff NIGHAT continues

to be deprived of the use of her funds.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment

gainst the Defendant NEIMAN for all damages, prejudgment and post judgment interest,

and any other and further relief that the Court deems appropriate.

### COUNT III:
### CIVIL THEFT PURSUANT TO SECTION 772.11. FLORIDA STATUTES
### (DEFENDANT THE FORMULA)

75.   Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-

six (56) as if fully set forth herein.

76.   This is an action for civil theft against Defendant THE FORMULA, pursuant

to Section 772.11, Florida Statutes.

77.   Pursuant to Section 772.11, Florida Statutes a plaintiff claiming civil theft has

"a cause of action for threefold the actual damages sustained and, in any such action, is

entitled to minimum damages in the amount of $200 and reasonable attorney's fees and

court costs in the trial and appellate courts." This statute requires the plaintiff to make a

written demand for $200 or the treble damage amount of the person liable for the

damages, and to provide that person thirty (30) days within which to respond to the

demand.

78.   Beginning in approximately July and August of 2005, and continuing to date,

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 13

Defendant THE FORMULA has refused to return Plaintiff NIGHAT's deposit to her.

79.    Defendant NEIMAN, who purports to be the owner of THE FORMULA, has indicated to Plaintiff NIGHAT that he has her funds, but refuses to return them to her.

80.    Defendant THE FORMULA was formally notified *via* correspondence dated April 24, 2006 to return said funds belonging to Plaintiff NIGHAT to her. Said correspondence made the statutory demand for return of the funds and treble damages for an amount totaling $300,000. A copy of the Demand Letter is attached hereto as **Exhibit "G."**

81.    To date, Defendant THE FORMULA has ignored the Civil Theft Demand, and continues to wrongfully deprive Plaintiff NIGHAT of her funds.

82.    Defendant THE FORMULA is aware of Defendant NEIMAN's actions, and, more importantly, is aware that the funds at issue belong to Plaintiff NIGHAT, but has inexplicably refused to return the subject funds to her.

83.    As a result of Defendant THE FORMULA's actions and inactions, Plaintiff NIGHAT continues to be deprived of the use of her funds.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment in its favor and award it treble damages as well as attorneys fees and court costs in accordance with Section 772.11, Florida Statutes, along with all prejudgment and post-judgment interest and any other relief that this Court deems appropriate.

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 14

## COUNT IV: CONVERSION
## (DEFENDANT THE FORMULA)

84.    Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-six (56) as if fully set forth herein.

85.    This is an action against Defendant THE FORMULA for conversion of funds, of which the current value exceeds $100,000, inclusive of interest.

86.    The subject funds in the amount of $100,000 were placed directly into the escrow account with Defendant US TITLE as more specifically described in the general allegations portion of this pleading.

87.    Said funds have since been removed without Plaintiff NIGHAT's authorization.

88.    Upon information and belief, said funds were removed by Defendant NEIMAN, who purports to be the owner and operator of Defendant THE FORMULA.

89.    Beginning in approximately July and August of 2005, and continuing to date, Defendant THE FORMULA has refused to return Plaintiff NIGHAT's deposit to her, converting said funds to its own use and benefit, through its purported owner, Defendant NEIMAN.

90.    Defendant NEIMAN, who purports to be the owner of THE FORMULA, has indicated to Plaintiff NIGHAT that he has her funds, but refuses to return them to her.

91.    Defendant THE FORMULA is aware of Defendant NEIMAN's actions, and, more importantly, is aware that the funds at issue belong to Plaintiff NIGHAT, but has

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 15

inexplicably refused to return the subject funds to her.

92. As a result of Defendant THE FORMULA's actions and inactions, Plaintiff NIGHAT continues to be deprived of the use of her funds.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment against the Defendant THE FORMULA for all damages, prejudgment and post judgment interest, and any other and further relief that the Court deems appropriate.

## COUNT V:  BREACH OF FIDUCIARY DUTY
## (DEFENDANTS NEIMAN, THE FORMULA, COMPASS ROSE, US TITLE, SHAUKAT AND FIRST INTEGRITY)

93. Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-six (56) as if fully set forth herein.

94. This is an action for breach of a fiduciary duty against Defendants NEIMAN, THE FORMULA, COMPASS ROSE, US TITLE, SHAUKAT and FIRST INTEGRITY.

95. At all times material hereto, NEIMAN worked in a fiduciary capacity to THE FORMULA, through SHAUKAT, and its joint venture buyers, including Plaintiff NIGHAT.

96. To this end, as Plaintiff NIGHAT trusted Defendant NEIMAN to fairly transact business on her behalf, and Defendant NEIMAN accepted such responsibility. Defendant NEIMAN owed a fiduciary duty to act in good faith on behalf of Plaintiff NIGHAT.

97. Additionally, THE FORMULA and its employees, agents, officers and other representatives including SHAUKAT owed a similar fiduciary duty to Plaintiff NIGHAT and its other joint venture buyers to ensure that her rights were protected against fraud and

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 16

illegal activity, as Plaintiff NIGHAT entrusted THE FORMULA to ensure that its employees,

agents, officers and other representatives acted in Plaintiff NIGHAT's best interest.

98.     Additionally, as Plaintiff NIGHAT entrusted Defendant COMPASS ROSE with

the funds for the subject project and Defendant COMPASS ROSE accepted said

responsibility, Defendant COMPASS ROSE owed Plaintiff NIGHAT the fiduciary duty to

ensure that her funds invested in its project were safeguarded from being used and, or,

accessed in any manner or fashion inconsistent with Plaintiff NIGHAT's direction.

99.     Likewise, Defendant US TITLE, as the escrow agent over the subject funds

to whom Plaintiff NIGHAT entrusted Defendant US TITLE with the funds and to which

Defendant US TITLE accepted said responsibility, Defendant US TITLE owed Plaintiff

NIGHAT the fiduciary duty of not releasing Plaintiff NIGHAT's deposited funds without her

permission or authorization

100.    Further, FIRST INTEGRITY, owed Plaintiff the fiduciary duty of not accepting

Plaintiff's funds without Plaintiff's knowledge and/or permission.

101.    In his fiduciary capacity, Defendant NEIMAN entered into agreements with

builders and developers of condominium units, such as COMPASS ROSE, and SHAUKAT,

on behalf of THE FORMULA and its joint venture buyers.

102.    As set forth above, Plaintiff NIGHAT, as a joint venture buyer, invested

$100,000 into the Compass Rose project through THE FORMULA.

103.    The project however was never completed and, in turn, as set forth in detail

above, Plaintiff NIGHAT exercised her right to demand the refund of her investment.

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 17

104.   Despite various demands, however, Defendants have refused to return her deposit.

105.   In fact, it has since been learned that Defendants COMPASS ROSE and US TITLE failed to safeguard Plaintiff NIGHAT's funds and released them to Defendant NEIMAN and/or FIRST INTEGRITY without first obtaining permission or authorization from Plaintiff NIGHAT.

106.   Defendant NEIMAN used his position, through SHAUKAT, as a fiduciary to obtain an unfair financial advantage over Plaintiff NIGHAT by retaining her deposit and refusing to return it to her.

107.   Similarly, Defendants THE FORMULA, ostensibly being controlled by Defendant NEIMAN, also abused its position as a fiduciary to obtain unfair financial advantage over Plaintiff NIGHAT by retaining her deposit and refusing to return it to her.

108.   Defendants all abused their respective positions as a fiduciary by taking improper advantage of their fiduciary relationships with Plaintiff NIGHAT at the expense, and to the detriment of Plaintiff NIGHAT, thereby breaching their fiduciary duties owed to her.

109.   Plaintiff NIGHAT has been damaged as a result of Defendants' breaches of their respective fiduciary duties owed to her.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment against Defendants NEIMAN and THE FORMULA for all damages sustained, plus all related prejudgment and post-judgment interest, and any other relief this Court deems just

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 18

and proper.

## COUNT VI: CONVERSION
## (DEFENDANT SHAUKAT)

110.   Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-six (56) as if fully set forth herein.

111.   This is an action against Defendant SHAUKAT for conversion of funds, of which the current value exceeds $100,000, inclusive of interest.

112.   The subject funds in the principal amount of $100,000 were placed directly into the an account with Defendant US TITLE as more specifically described in the general allegations portion of this pleading.

113.   SHAUKAT, coverted these funds for his own use by entering into a letter of intent with the COMPASS ROSE as described in the general allegations of this pleading.

114.   Defendant SHAUKAT is aware that the funds at issue belong to Plaintiff NIGHAT, but has not return the subject funds to her.

115.   As a result of Defendant SHAUKAT's conduct, Plaintiff NIGHAT continues to be deprived of the use of her funds.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment against the Defendant SHAUKAT for all damages, prejudgment and post judgment interest, and any other and further relief that the Court deems appropriate.

## COUNT VII
## FRAUDULENT INDUCEMENT

116.   Plaintiff NIGHAT restates and revers paragraphs one (1) through fifty-six (56)

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 19

as if fully set forth herein.

117.   SHAUKAT made a false statement regarding a material fact specifically that NIGHAT needed to make a check payable to U.S. TITLE for $100,000 to purchase boat slips at COMPASS ROSE.

118.   SHAUKAT knew or should have known the representation was false;

119.   SHAUKAT intended that the representation induce plaintiff to act on it; and in fact NIGHAT did act on it by delivering a check in the amount of $100,000 made payable to U.S. TITLE.

120.   NIGHAT suffered damages in justifiable reliance on the representation.

WHEREFORE, Plaintiff NIGHAT respectfully requests this Court enter judgment against the Defendant SHAUKAT for all damages, prejudgment and post judgment interest, and any other and further relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via facsimile and U.S. Mail this ___ day of April, 2008 to: **David A. Ray, Esq.**, and **Jessica Kaufman, Esq.**, Adorno & Yoss LLP, 350 East Las Olas Blvd., 17th Floor. Ft. Lauderdale, Florida 33301; **Jay Steven Levine, Esq.**, and **Christopher A. Sajdera, Esq.**, Jay Steven Levine, P.A., 2500 Military Trail, Suite 283, Boca Raton, FL 33431; **Frank J. Aloia, Jr.,**

Naseer v Neiman, et al.
Third Amended Complaint
Case No.: 06-005981 (13)
Page 20

**Aloia, Jr., Esq.**, Aloia & Roland, LLP, 2250 First Street, Fort Myers, FL 33901 and **Demian**

**M. Kruchten, Esq.**, Kruchten Law Firm, LLC, 975 6th Avenue South, Suite 200, Naples,

FL 34102.

**FRANK, WEINBERG & BLACK, P.L.**
Attorneys for Plaintiff
7805 SW Sixth Court
Plantation, Florida 33324
Telephone:   (954) 474-8000
Facsimile:    (954) 474-9850

By: _____
      ROBERT T. SLATOFF
      Florida Bar No. 816116


By: _____
      JACQUELINE A. GRADY
      Florida Bar No. 635871



NO. 0854    P. 1/2

## LETTER OF INTENT

This Letter of Intent is made as of the 6th day of June, 2004 by and between Compass Rose Venture, LLC, a Florida Limited Liability Company, ("Seller" or "Developer") and The Formula, Inc ("Purchaser" or "Buyer").

WHEREAS, Seller and Buyer will execute a Purchase and Sale Agreement (the "Contract") with respect to the purchase and sale of Boat Wet Slip numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 and Boat Dry Slip numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 (the "Units") in Compass Rose Venture, LLC, a Condominium containing One hundred and Sixty-two condominium Boat Slip units being developed by Seller, and

WHEREAS, the parties are entering into this Letter of Intent for the purpose of adding or modifying certain terms and conditions of the Contract to be executed by the parties, as set forth in this Letter of Intent.

NOW, THEREFORE, in consideration of the mutual covenants, promises and undertakings of the parties hereto together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. On Wednesday, June 9, 2004, Buyer will place an "Initial Deposit" of $100,000 into Developers escrow account at First Integrity Bank. The balance of Buyers 10% deposit will be paid to Developer escrow account within 15 days of Developer notifying Buyer in writing that Developer has obtained written approval of his Condo Docs by the State of Florida, and has provided Buyer with a Purchase Contract. There shall be no further deposits due under this Contract.

2. Buyer's deposits will always be held in an F.D.I.C. interest bearing Escrow account. No portion of the Buyer's deposits shall be used for construction. The interest on the Deposit shall be credited to Buyer at the time of closing and or cancellation.

3. Buyers Unit shall receive the same interior/exterior specifications typical to every other unit in the marina. If any considerations, (discounted or free upgrades) are given to any other purchaser, Buyer shall receive the same considerations.

4. Buyer may assign this Contract with written notice to Developer by providing the name and address of the Assignee.

5. The project will contain 132 Dry Slip units. All 132 Dry Slips will be the same size/dimension. Buyer is purchasing 25 Dry Slip units for $59,415 each.

6. The project will contain 30 Wet Slip units. All 30 Wet Slips will be the same size/dimension. Buyer is purchasing 10 Wet Slip units for $125,000 each.

7. Buyer's obligation for contribution to the condominium association fees, reimbursement of association expenses or of taxes shall commence on the date Buyer closes with Developer.

8. Seller shall not require Buyer to close unless the Unit is approved to store a vessel, all renovations are completed, and all finishes as required by Paragraph 3 are completed. The Buyer shall not be required to close until any "punch-out" list/repairs are reduced to a value of $500 or less. Any "punch-out" list/repair, which fall below $500 will be repaired within 30 days of closing.

9. Developer will not sue Buyer for Specific performance. The Seller will accept all deposits as liquidated damages in the even of a breach of this Agreement.

10. Any notice pursuant to this Agreement shall be given in writing by (a) expedited delivery service (either Federal Express, UPS, or Airborne), or (b) United States Mail, postage prepaid, registered certified mail, return receipt requested, sent to the intended addressee at the address set forth in the Contract. In the case of

6-6-04

KS  6-6-04

EXHIBIT A

the Seller, Sellers agent and/or representative may sign for the mail. Any notice served on Seller or Buyer shall also be served on: The Formula, Inc. 10234 S.W. 26th Street, Davie, Fl 33324.

11. The parties hereby ratify the terms and conditions set forth in the Contract, except as modified herein. In the event of conflict between the Contract and this Letter of Intent, the language of this Letter of Intent shall control.

12. If construction of the project has not commenced by December 25, 2004, or if construction of the project is not completed within 12 months from the date of commencement, completion being defined as issuance of a Certificate of Occupancy for the building, Buyer shall have the absolute right to cancel this Agreement and receive a full refund of all deposits paid with interest earned thereon.

13. Buyer shall have 30 days from delivery of written notice to Buyer to cure any default of this Agreement. Seller's notice shall state "what" the default is and "how" it is to be cured by Buyer.

14. Seller shall pay a commission equal to 2.5% of the total purchase price of the Dry Slip Units. The commission shall be payable to a Broker or Attorney designated by The Formula, Inc. The commissions shall be paid simultaneous with the closing of each Dry Slip Unit. In the event Seller fails to timely make the commission payment, Buyer shall have the absolute right to terminate this Agreement and receive a full refund of his deposit with interest. This relief shall be in addition to any other relief the Realtor/Broker may have as a matter of law.

15. Buyer and Seller both agree that this Letter of Intent forms a legal and binding Contract. Buyer and Seller both agree that the exact terms of this Letter of Intent shall automatically be incorporated into a Purchase and Sale Agreement between the parties. Seller agrees that it must offer a Purchase and Sale Agreement to Buyer within 3 days of its Condo Docs being approved by the State of Florida. Buyer and Seller both agree that this Contract is binding and non-cancelable be either party. The only way this Contract may be cancelled is if Seller does not obtain city/state/governmental approval to develop, renovate, and condominiumize the subject marina.

16. Buyer agrees that once a Purchase and Sale Agreement is provided to it by Seller, Buyer will have 35 separate/individuals/entities execute and fund each Purchase and Sale Agreement, with no one individual/entity purchasing more than 2 units in any one individual/entities name.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum as of the date first above written.

Seller:

Compass Rose Ventura, LLC a Florida limited Liability Company

By: _____
Name: STEVIE MORSSONEY
Title: MANAGER
Date: 6-6-04


Buyer:

By: _____
Name: Roshil Shawket
Date: 6-6-04

Item Detail



**EXECUTIVE NATIONAL BANK**                    **Item Detail**

| ◄◄◄ | ◄ | ► | ►►► | Check 25 of 30 | | |
|---|---|---|---|---|---|---|
| tranDate | account | amount | serial | tranCode | aba | sequence |
| 06/11/2004 | 0000000728464006 | $100,000.00 | 000000000208 | 000158 | 067008155 | 14006015 |

NIGHAT NASEER
REHAN NASEER                                                208
9600 SW 122 AVE
MIAMI, FL 33186                                            63-815/670

June 8 2004
DATE

PAY TO THE
ORDER OF  U.S. Title Escrow Account  |  $ 100,000⁰⁰

one hundred thousand ⁰⁰/₁₀₀              DOLLARS

EXECUTIVE NATIONAL BANK
9600 NORTH KENDALL DRIVE
MIAMI, FLORIDA 33176

FOR Compass Rose Venture - Boat Slips

⑆067008155⑆ 0728464006⑈ 0 208 ⑇0010000000⑇

EXHIBIT B

NIGHAT NASEER
REHAN NASEER
9600 SW 122 AVE
MIAMI, FL 33186

208
63-815/670

June 8 2004
DATE

PAY TO THE
ORDER OF   U.S. Title Escrow Account       $ 100,000

one hundred thousand 00/100       DOLLARS

EXECUTIVE NATIONAL BANK
9600 NORTH KENDALL DRIVE
MIAMI, FLORIDA 33176

FOR  Compass Rose Venture - Boat Slips

⑆067008155⑆ 072846406 0208

RECEIVED 6/9/04

for Senesi

Hour

Fred P. Senesi
President

U.S. Title & Escrow Inc.

Broward (954) 568-9885
Toll Free (877) 833-2205
Fax (954) 563-7754
ustitle@bellsouth.net

2715 East Oakland Park Blvd., Fort Lauderdale, Florida 33306

**EXHIBIT C**



3706 N. Ocean Blvd
FL Lauderdale, FL 33308
954-410-3466
954-563-3463 - Fax

August 2, 2005

Brian Neiman
Formula, Inc.

Dear Brian,

We have received several calls from Rahad Nasser requesting a cancellation and return of the deposit for the slips at the Compass Rose Marina. I informed him that an officer of Formula, Inc. would need to sign the release and then we would forward the funds to him. Attached is a copy of the cancellation and release of the letter of intent that he requested. The release is subject to the return of the deposit. The Marina project has been placed on hold for an indefinite period as we are in litigation with the insurance agency.

Please fax the release to me so that I may request the funds from the bank.

Sincerely,

John Lasousky

**EXHIBIT** D

Re: Meeting

| | |
|---|---|
| **From:** | Neimansformula |
| **To:** | NikiNaseer |
| **Cc:** | farhannase, RehanNsr |
| **Subject:** | Re: Meeting |
| **Date:** | Mon, 11 Jul 2005 2:06:09 AM Eastern Daylight Time |

# THE FORMULA

Hi Niki:

I spoke with the Bank, First Integrity Bank of Naples, who made the loan to Compass Rose. I spoke with the Bank President, Pat Kruptin on Friday, July 8, 2005. According to him to the Compass loan is in "good standing" and the project is proceeding. They have not yet called upon our 2nd deposit because they have not received approval of their condo docs. However, the boat slips have gone up in value (in particular, the wet slips).

I am authorizing Farhan to give you a copy of our signed Agreement with Compass Rose. If you want to abandon your position and you require a return of your $100,000 deposit I am hereby authorizing Farhan to use Formula's money from KBF,LLC to reimburse you, and I will take over your position in Compass Rose. While I do not recommend that you do so, that is your option.

Please advise Farhan of your decision.

Warmest Regards,

Brian Neiman
The Formula, Inc.
Founder
Direct: (954) 563-2122
Fax: (954) 568-6343

**EXHIBIT** *E*

1 & 3

7/11/05

Re: (no subject)

| | |
|---|---|
| **From:** | Neimansformula |
| **To:** | NikiNaseer |
| **Subject:** | Re: (no subject) |
| **Date:** | Tue, 2 Aug 2005 8:42:39 PM Eastern Daylight Time |

# THE FORMULA

Hi Niki:

I will be happy to return your Compass Rose $100,000 on Wednesday, August 3, 2005. Please advise who you would like your check payable to. Also please advise if you will be picking the check up at The Palms Front Desk or will I be mailing it to you. If mailing, please provide your address.

Warmest Regards,

Brian Neiman
The Formula, Inc.
Founder
Direct: (954) 563-2122
Fax: (954) 568-6343

EXHIBIT E

2 of 3

8/4/05

From:   NikiNaseer
To:   Neimansformula
Subject:   Re: (no subject)
Date:   Wed, 03 Aug 2005 10:43:20 -0400

hello brian, thank you for that, also, i am going to ft. lauderdale so i can pick up check from Palms Front Desk. i am leaving my house now at 11am.  thanks again.

niki

———Original Message———
From: Neimansformula
To: NikiNaseer
Sent: Tue, 2 Aug 2005 8:42:39 PM Eastern Daylight Time
Subject: Re: (no subject)

Hi Niki:                                                      [Image removed]
I will be happy to return your Compass Rose $100,000 on Wednesday, August 3, 2005. Please advise who you would like your check payable to. Also please advise if you will be picking the check up at The Palms Front Desk or will I be mailing it to you. If mailing, please provide your address.

Warmest Regards,

Brian Neiman
The Formula, Inc.
Founder
Direct: (954) 563-2122
Fax (954) 568-6343

**EXHIBIT** E

3 of 3

8/4/05

# TRIPP SCOTT

### Attorneys At Law
### A Professional Association

PETER G. HERMAN
Direct Dial: 954.760.4913
Email: pgh@trippscott.com

February 27, 2006

## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mr. Brian M. Neimman
c/o Bart Houston, Esquire
Adorno & Yoss, LLP
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301-4217

Re:     *Civil Theft Demand for Treble Damages Re: Compass Rose Deposit*

Dear Mr. Neiman:

Please be advised that the undersigned law firm represents Ms. Nighat Naseer in the above referenced matter.

Pursuant to section 772.11, Florida Statutes (2005), written demand is hereby made for the sum of $300,000 from you. This amount represents the treble damages amount you owe Ms. Naseer for the theft of her money. Please note, section 772.11, Florida Statutes (2005), also provides for recovery of attorney's fees and costs in the trial and appellate courts.

As you are aware, Ms. Nasser provided The Formula, Inc., with an initial one hundred thousand dollar deposit to be invested in the Compass Rose real-estate project. You, on behalf of The Formula, Inc., were to invest said deposit money as Ms. Naseer's fiduciary. Ms. Naseer, however, maintained the right to demand return of said funds at any time. To this end, Ms. Naseer has repeatedly demanded that you return the full sum to her. In fact, at one point a meeting was arranged whereby you met with Ms. Naseer to return the funds. Inexplicably, however, at the meeting you advised Ms. Naseer that you were keeping said funds and would never return them to her. Several verbal demands have been made to you since then, yet you continue to fail to return the deposit to Ms. Naseer.

As a result of the foregoing, demand is hereby made that you deliver to the undersigned law firm the sum of $300,000 within thirty (30) days from the date of this correspondence. Failure to comply with this demand will not only subject you to the above treble damages amount, but also

385032v:1 992757.0001

110 Southeast Sixth Street • Fifteenth Floor • Fort Lauderdale, Florida 33301
Post Office Box 14245 • Fort Lauderdale, Florida 33302
Tel 954.525.7500 • Fax 954.761.8475



EXHIBIT F

Mr. Brian Neiman
February 27, 2006
Page 2

attorney's fees and costs. Compliance with this demand within the proscribed period shall result in the execution of a written release by our client, releasing you from further civil liability with respect to the theft of the specific sums demanded herein. Nothing herein, however, shall constitute a waiver, release or settlement of any of our client's rights, all of which are expressly reserved.

Very truly yours,

PETER G. HERMAN
For the Firm

\PGH

385032v:1 992757.0001

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

NIGHAT NASEER, individually,

      Plaintiff,

v.

BRIAN NEIMAN, an individual, THE
FORMULA, INC., a Florida corporation,
COMPASS ROSE VENTURE, LLC, a
Florida limited liability company, and
U.S. TITLE & ESCROW, INC., a
Florida corporation, FIRST INTEGRITY
BANK, a foreign corporation, and
KASHIF SHAUKAT, an individual,

      Defendants.

CASE NO.: 06-005981 (13)

_____/

## DEFENDANT'S, U.S. TITLE & ESCROW, INC., ANSWER AND CROSS-CLAIM TO PLAINTIFF'S THIRD AMENDED COMPLAINT

COMES NOW, Defendant, U.S. TITLE & ESCROW, INC. ("U.S. TITLE"), by and

through this its undersigned counsel, and files this its Answer and Cross-Claim to Plaintiff's

Third Amended Complaint and states as follows:

    1.    U.S. TITLE admits for jurisdictional purposes only.

    2.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations

contained in paragraph 2.

    3.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations

contained in paragraph 3.

    4.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations

contained in paragraph 4.



EXHIBIT
Comp
"B"

8-4

5.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 5.

6.     U.S. TITLE admits the allegations contained in paragraph 6.

7.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 7.

8.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 8.

9.     U.S. TITLE admits the allegations contained in paragraph 9.

10.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 10.

11.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 11.

12.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 12.

13.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 13.

14.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 14.

15.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 15.

16.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 16.

17.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 17.

18.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 18.

19.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 19.

20.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 20.

21.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 21.

22.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 22.

23.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 23.

24.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 24.

25.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 25.

26.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 26.

27.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 27.

28.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 28.

29.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 29.

30.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 30.

31.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 31.

32.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 32.

33.     U.S. TITLE admits that U.S. TITLE was delivered Plaintiff's deposit by Plaintiff, but U.S. TITLE is without knowledge, and therefore denies, as to the remainder of the allegations contained in paragraph 33.

34.     U.S. TITLE admits that the U.S. Title provided the referenced handwritten note, but U.S. TITLE denies the remainder of the allegations contained in paragraph 34.

35.     U.S. TITLE denies the allegations contained in paragraph 35.

36.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 36.

37.     U.S. TITLE admits that at same time U.S. TITLE informed Plaintiff of transfer to First Integrity Bank, but U.S. TITLE is without knowledge, and therefore denies, as to the remainder of the allegations contained in paragraph 37.

38.     U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 38.

39.    U.S. TITLE denies that Defendant Compose Rose instructed U.S. TITLE to transfer the funds to Defendant First Integrity Bank, and U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 39.

40.    U.S. TITLE TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 40.

41.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 41.

42.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 42.

43.    U.S. TITLE denies the allegations contained in paragraph 43.

44.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 44 and therefore denies.

45.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 45.

46.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 46.

47.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 47.

48.    U.S. TITLE denies the allegations contained in paragraph 48.

49.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 49.

50.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 50.

51.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 51.

52.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 52.

53.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 53.

54.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 54.

55.    U.S TITLE admits that First Integrity is the escrow agent in the Letter of Intent, and U.S. TITLE is without knowledge, and therefore denies, as to the remainder of the allegations contained in paragraph 55.

56.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 56.

57.    U.S. TITLE provides no response to the allegations from 57 through 92 as these allegations do not relate to U.S. TITLE.

58.    U.S. TITLE reasserts and reavers the responses for the allegations as stated above for allegation numbers 1 through 56 as to the allegations contained in paragraph 93.

59.    U.S. TITLE denies the allegations contained in paragraph 94.

60.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 95.

61.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 96.

62.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 97.

63.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 98.

64.    U.S. TITLE denies the allegations contained in paragraph 99.

65.    U.S. TITLE denies the allegations contained in paragraph 100.

66.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 101.

67.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 102.

68.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 103.

69.    U.S. TITLE denies the allegations contained in paragraph 104.

70.    U.S. TITLE denies the allegations contained in paragraph 105.

71.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 106.

72.    U.S. TITLE is without knowledge, and therefore denies, as to the allegations contained in paragraph 107.

73.    U.S. TITLE denies the allegations contained in paragraph 108.

74.    U.S. TITLE denies the allegations contained in paragraph 109.

75.    U.S. TITLE provides no response to the allegations from 110 through 120 as these allegations do not relate to U.S. TITLE.

## AFFIRMATIVE DEFENSES

76. <u>FIRST AFFIRMATIVE DEFENSE - FAILURE TO STATE A CAUSE OF ACTION</u>. Plaintiff fails to state a cause of action against U.S. Title for breach of fiduciary duty for the following reasons:

A.    No fiduciary duty is owed to Plaintiff by U.S. Title as U.S. Title did not accept or undertake the duties of a fiduciary.   U.S. Title and Plaintiff did not enter into an express escrow agreement to establish such an escrow relationship. The express escrow agreement for this transaction, the Letter of Intent, which is attached to Plaintiff's Third Amended Complaint as "Exhibit A" (hereinafter referred to as the "Letter of Intent"), names Defendant First Integrity Bank as the escrow agent to the transaction. U.S. Title is not a party to the Letter of Intent or to the transaction.   Moreover, the mere delivery of funds to U.S. Title does not establish or create an escrow relationship or agreement.

B.    U.S. Title complied with the Letter of Intent by transferring Plaintiff's deposit to Defendant First Integrity Bank. U.S. Title did not cause Plaintiff to suffer any damages, but rather, U.S. Title closely followed the Letter of Intent by sending the funds to Defendant First Integrity Bank. In fact, U.S. Title acted in a prudent manner by transferring Plaintiff's deposit to Plaintiff's escrow agent, Defendant First Integrity Bank, pursuant to the Letter of Intent.

C.    Plaintiff has not suffered any damages because Plaintiff's deposit remains in the possession of Defendant First Integrity Bank.

- 8 -

D.  Plaintiff's agent(s), Defendant First Integrity Bank and/or another agent, such as one of the other above-mentioned Defendants, maintains authority pursuant to the Letter of Intent, or another type of power of attorney/agreement, to instruct U.S. Title to deliver the funds held in U.S. Title's escrow to Defendant First Integrity Bank's escrow account.

77.  SECOND AFFIRMATIVE DEFENSE - ESTOPPEL  Plaintiff is estopped from alleging that U.S. Title breached a fiduciary duty as Plaintiff's escrow agent, and states as follows:

A.  Per the Letter of Intent, which Plaintiff relies upon as her basis for this suit, Defendant First Integrity Bank is Plaintiff's escrow agent, and Plaintiff was supposed to deliver her deposit to Defendant First Integrity Bank.  Plaintiff voluntarily entered into the escrow agreement with Defendant First Integrity Bank.  Plaintiff violated the agreement by delivering her deposit to U.S. Title. U.S. Title also received a copy of the Letter of Intent.  The Letter of Intent stated that Plaintiff's escrow agent was Defendant First Integrity, and that Plaintiff's deposit should have been delivered to Defendant First Integrity Bank.  U.S. Title ultimately sent the deposit to Defendant First Integrity Bank, who was acting as agent for Plaintiff and with actual authority to act on Plaintiff's behalf based on the Letter of Intent.  Relying on the Letter of Intent, U.S. Title delivered said funds to Defendant First Integrity Bank, and relied to its detriment upon Plaintiff's Letter of Intent.  Therefore, Plaintiff is estopped from alleging that U.S. Title breached its fiduciary duty to Plaintiff because U.S. Title only acted on Plaintiff's instructions.

- 9 -

B.     Per the Letter of Intent, which Plaintiff relies upon as her basis for this suit, Defendant First Integrity Bank is Plaintiff's escrow agent, and Plaintiff was supposed to deliver her deposit to Defendant First Integrity Bank. Plaintiff voluntarily entered into the escrow agreement with Defendant First Integrity Bank. Plaintiff violated the agreement by delivering her deposit to U.S. Title. Subsequently, U.S. Title was informed by Plaintiff's escrow agent, Defendant First Integrity, that per the Letter of Intent, Plaintiff should have delivered her deposit to Defendant First Integrity Bank. Defendant First Integrity Bank, acting as agent for Plaintiff and with actual authority to act on Plaintiff's behalf, informed U.S. Title about his relationship with Plaintiff. Relying on Plaintiff's agent's statements, U.S. Title delivered said funds to Defendant First Integrity Bank, and relied to its detriment upon Plaintiff's agent's statements. Therefore, Plaintiff is estopped from alleging that U.S. Title breached its fiduciary duty to Plaintiff because U.S. Title only acted on Plaintiff's instructions.

78.     THIRD AFFIRMATIVE DEFENSE - CONSENT   Plaintiff provided Consent to U.S. Title to transfer Plaintiff's deposit to Defendant First Integrity Bank that nullifies any claims against U.S. Title for breach of fiduciary duty, and states as follows:

A.     Plaintiff consented to her deposit being delivered to Defendant First Integrity Bank through the Letter of Intent. The Letter of Intent states that Plaintiff shall deliver a deposit to Defendant First Integrity Bank, and that Defendant First Integrity Bank shall act as the escrow agent for said transaction. As put forth in the Third Amend Complaint, the Letter of Intent governs and controls

- 10 -

Plaintiff's interest and deposit. Plaintiff agreed to the Letter of Intent, having Plaintiff's agent sign same. Plaintiff consented to the deposit being held in Defendant First Integrity Bank's account. Plaintiff's consent authorized U.S. Title to transfer the deposit to Defendant First Integrity Bank. U.S. Title cannot be held liable for transferring Plaintiff's deposit to Defendant First Integrity Bank

B.     Plaintiff consented to her deposit being delivered to Defendant First Integrity Bank as Defendant First Integrity Bank acting on behalf of Plaintiff ordered U.S. Title to deliver the deposit in accordance with the language of the Letter of Intent. Plaintiff consented to granting authority to Defendant First Integrity Bank.

79.     <u>FOURTH AFFIRMATIVE DEFENSE - WAIVER</u> Plaintiff waived her rights pursuant to the Letter of Intent as Plaintiff relinquished her rights by delivering her deposit to U.S. Title rather than complying with the Letter of Intent. The Letter of Intent states that Plaintiff shall deliver a deposit to Defendant First Integrity Bank, and that Defendant First Integrity Bank shall act as the escrow agent for said transaction. As put forth in the Third Amend Complaint, the Letter of Intent governs and controls Plaintiff's interest and deposit. Plaintiff agreed to the Letter of Intent, having Plaintiff's agent sign same. However, Plaintiff breached the Letter of Intent by delivering the deposit to U.S. Title. As a result, Plaintiff waives her rights under the Letter of Intent by failing to comply with same.

## CROSS-CLAIM

Defendant, U.S. TITLE & ESCROW, INC., ("U.S. Title"), by and through its undersigned counsel and pursuant to Florida Rules of Civil Procedure 1.170(g), and

crossclaims against Defendants, FIRST INTEGRITY BANK, ("First Integrity") and KASHIF SHAUKAT ("Shaukat"), and as grounds in support thereof, states as follows:

## GENERAL ALLEGATIONS

1. This is an action for indemnity and within the jurisdictional limits of this Court.

2. Plaintiff, NIGHAT NASEER, ("Plaintiff"), alleges in Count V, Paragraph 99 of her Third Amended Complaint that U.S. TITLE was the "escrow agent over the subject funds to whom Plaintiff NIGHAT entrusted Defendant U.S. TITLE with the funds and to which Defendant U.S. TITLE accepted said responsibility, Defendant U.S. TITLE owed Plaintiff NIGHAT the fiduciary duty of not releasing Plaintiff NIGHAT's deposited funds without her permission or authorization." Pl. Third Am. Comp. Para. 99.

3. Further, Plaintiff alleges that "Defendants COMPASS ROSE and U.S. TITLE failed to safeguard Plaintiff NIGHAT's funds and released them to Defendant NEIMAN and/or FIRST INTEGRITY without first obtaining permission or authorization from Plaintiff NIGHAT." Pl. Third Am. Comp. Para. 105.

4. U.S. Title, which is a Florida corporation, was not the escrow agent for this transaction described in the Third Amended Complaint (hereinafter referred to as "transaction").

5. First Integrity, which is a national banking association, is an agent of Plaintiff who is the escrow agent for the transaction governed by the Letter of Intent (hereinafter referred to as the "Letter of Intent").

6. At all times relevant to the action, Shaukat, who is an individual residing in Broward County, is and/or was an agent of Plaintiff.

7. Plaintiff owns an interest in the Defendant The Formula. Pl. Third Am. Comp. Para. 22.

8. The transaction's agreement, the Letter of Intent, identifies First Integrity as the escrow agent for the transaction and Plaintiff's funds. A copy of the Letter of Intent is attached as Exhibit "A" to Plaintiff's Third Amended Complaint.

9. Plaintiff's Third Amended Complaint seeks to enforce the Letter of Intent in its claim for return of the deposit. Pl. Third Am. Comp. Para. 36.

10. The Letter of Intent instructs Plaintiff to deliver a one-hundred thousand ($100,000) deposit (hereinafter referred to "deposit") to the escrow agent for the transaction, First Integrity.

11. Despite the Letter of Intent stating to deliver the deposit to First Integrity, Shaukat, who signed the Letter of Intent on behalf of Plaintiff, directed Plaintiff to deliver the deposit to U.S. Title. Pl. Third Am. Comp. Para. 32.

12. Despite the Letter of Intent stating to deliver the deposit to First Integrity, Plaintiff delivered the deposit to U.S. Title. Pl. Third Am. Comp. Para. 33.

13. U.S. Title is wholly without fault and did not breach a fiduciary duty to Plaintiff.

14. U.S. Title did not agree to act as the escrow agent for Plaintiff for the transaction, and is not a party to the Letter of Intent.

15. U.S. Title owes no duty to Plaintiff absent an express agreement between U.S. Title and Plaintiff; and the mere delivering of funds to U.S. Title does not establish an escrow relationship with Plaintiff.

16. Subsequent to Plaintiff delivering the deposit to U.S. Title, First Integrity notified U.S. Title that Plaintiff should never have delivered said deposit to U.S. Title per the Letter of Intent.

17. Pursuant to the Letter of Intent and First Integrity's instructions, U.S. Title sent Plaintiff's deposit to First Integrity.

- 13 -

## COUNT I AGAINST SHAUKAT (INDEMNIFICATION)

18. U.S. Title realleges the General Allegations as is stated herein.

19. Shaukat should not have instructed Plaintiff to deliver said deposit to U.S. Title, violating the Letter of Intent.

20.    Shaukat knew that he made a false representation to Plaintiff when he told Plaintiff to deliver the deposit to U.S. Title because Shaukat signed the Letter of Intent and was aware that First Integrity was the escrow agent for the transaction.

21. Shaukat had an obligation to Plaintiff as Plaintiff's agent to facilitate the delivery of the deposit to the transaction's escrow agent, First Integrity.

22.    Shaukat is at fault and liable to Plaintiff because Shaukat made false representations to Plaintiff, which induced Plaintiff to deliver the funds to U.S. Title.

23.    As a result of Shaukat's actions, U.S. Title may be determined to be liable to Plaintiff during the course of this pending litigation.

24. However, U.S. Title could only be allegedly liable to Plaintiff because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of Shaukat.

25. U.S. Title has been forced to incur attorney fees and costs as a result of defending this lawsuit and filing this cross-claim and seeks indemnification for said attorney fees and costs from Shaukat, and for any judgment by Plaintiff against U.S. Title for any claims against U.S. Title, including breach of fiduciary duty.

26.    U.S. Title has retained the services of the undersigned counsel and has agreed to pay fees for the services provided.

WHEREFORE, Defendant U.S. Title demands a judgment against Defendant Shaukat for indemnification against any judgment by Plaintiff against U.S. Title for any claims, including breach of fiduciary duty, and for attorney fees and costs incurred in

defending this lawsuit and filing this cross-claim, and any and all other relief this Court deems just and proper.

## COUNT II AGAINST FIRST INTEGRITY (INDEMNIFICATION)

27. U.S. Title realleges the General Allegations as is stated herein.

28. First Integrity has an obligation to Plaintiff as Plaintiff's escrow agent to hold Plaintiff's deposit in escrow.

29.   First Integrity as Plaintiff's escrow agent instructed U.S. Title to transfer deposit to First Integrity, per the Letter of Intent

30. Plaintiff claims that the deposit should be released to Plaintiff per the Letter of Intent.

31. First Integrity is at fault and liable to Plaintiff because First Integrity owes a duty to Plaintiff.

32. First Integrity should follow the directions of the Letter of Intent, Plaintiff or any other authorized party.

33. If the deposit is to be released to Plaintiff, First Integrity should release deposit to Plaintiff.

34. U.S. Title understands that First Integrity still holds the deposit in escrow, which should be interpled.

35. As a result of First Integrity's actions, U.S. Title could only be allegedly liable to Plaintiff during the course of this pending litigation.

36. However, U.S. Title may only be liable to Plaintiff because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of First Integrity.

37. U.S. Title has been forced to incur attorney fees and costs as a result of defending this lawsuit and filing this cross-claim and seeks indemnification for said attorney

fees and costs from First Integrity, and for any judgment by Plaintiff against U.S. Title for any claims against U.S. Title, including breach of fiduciary duty.

38.   U.S. Title has retained the services of the undersigned counsel and has agreed to pay fees for the services provided.

WHEREFORE, Defendant U.S. Title demands a judgment against Defendant First Integrity for indemnification against any judgment by Plaintiff against U.S. Title for any claims, including breach of fiduciary duty, and for attorney fees and costs incurred in defending this lawsuit and filing this cross-claim, and any and all other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via facsimile and regular U.S. mail to Robert T. Slatoff, Esquire and Jacqueline Grady, Esquire, 7805 SW Sixth Court, Plantation, Florida 33301, and U.S. mail to Frank J. Aloia, Jr., Esquire, 2250 First Street, Fort Myers, Florida 33901, and David A. Ray, Esquire, 350 E. Las Olas Boulevard, Suite 1700, Fort Lauderdale, Florida 33301, on this 4th day of August, 2008.

JAY STEVEN LEVINE, P.A.
Attorneys for Defendant U.S. Title & Escrow, Inc.
2500 North Military Trail, Suite 283
Boca Raton, Florida 33431
(561) 999-9925

By: _____
JAY STEVEN LEVINE, ESQUIRE
Florida Bar No. 021973
CHRISTOPHER A. SAJDERA, ESQUIRE
Florida Bar No. 866601